# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PITTSBURGH LEAGUE OF YOUNG )
VOTERS EDUCATION FUND and )
AMERICAN CIVIL LIBERTIES )
FOUNDATION OF PENNSYLVANIA, )
                               )
           Plaintiffs, )
                               )
           v. )      02: 06cv1064
                               )
PORT AUTHORITY OF ALLEGHENY )
COUNTY; and ANTHONY J. HICKTON, )
Director of Sales, )
                               )
           Defendants. )

## MEMORANDUM OPINION AND ORDER OF COURT

March 30, 2007

       Presently pending before the Court for disposition are the MOTION TO DISMISS AMENDED COMPLAINT filed by defendant Port Authority of Allegheny County, with brief in support *(Document Nos. 30 and 31)* and the MOTION TO DISMISS AMENDED COMPLAINT filed by defendant Anthony J. Hickton, with brief in support (*Document Nos. 32 and 33*), the BRIEF IN OPPOSITION filed by plaintiffs, Pittsburgh League of Young Voters Education Fund and American Civil Liberties Foundation of Pennsylvania, (*Document No. 34*), the REPLY BRIEF filed by defendant Port Authority of Allegheny County (*Document No. 35*), and the REPLY BRIEF filed by defendant Anthony J. Hickton (*Document No. 36*).

       After careful consideration of the filings in support and opposition thereto and the relevant case law, the Court will deny both motions.

# I. BACKGROUND

As the law requires, all disputed facts and inferences are resolved in favor of the Plaintiffs.  The following background is drawn from the Amended Complaint, unless otherwise noted, and the factual allegations therein are accepted as true for the purpose of this opinion. On December 8, 2006,  plaintiffs Pittsburgh League of Young Voters Education Fund ("Fund") and American Civil Liberties Foundation of Pennsylvania ("ACLU") filed an Amended Complaint with this Court pursuant to 42 U.S. C. § 1983 in which they allege that Defendants have violated their rights under the First and Fourteenth Amendments to the United States Constitution.

The named plaintiffs in the Amended Complaint are the Fund and the ACLU.  The Fund is 501(c)(3) non-profit organization registered with the Internal Revenue Service under the United States Tax Code.  Am. Compl. ¶ 4.   The Fund "works to educate traditionally disenfranchised or ignored communities to use the democratic process to improve their lives." Id.  The Fund works closely with the Pittsburgh League of Young Voters, a 501(c)(4) organization that shares office space with the Fund and has the same mission, but is a separate entity.  Id.  The ACLU is a non-profit, public-interest organization "dedicated to defending and protecting civil rights and civil liberties" through the mechanisms of litigation, lobbying, and public-education efforts.  Id. ¶ 5.  Among other things, the ACLU focuses on voting-rights work and recently received restricted ear-marked donations primarily for public-relations efforts related to that work, which included the efforts involved in this case.  Id.

Defendant Port Authority of Allegheny County ("PAT") is a state-government agency established by, and operating under, the laws of Pennsylvania.  PAT owns and operates

the public-mass-transit system in Allegheny County.  Id. ¶ 6.  Defendant Anthony J. Hickton is

PAT's Director of Sales and is responsible for deciding which advertisements will run on PAT

buses.  Id. ¶ 7.

Plaintiffs allege that in October 2005 they joined with a broad group of community

organizations to create an "ex-offender-voting-rights project" "designed to educate ex-offenders

about their voting rights, register ex-offenders to vote and increase ex-offenders' involvement

in the political systems that change their lives."  Id. ¶ 8.  This group decided to use bus

advertisements as a means of providing accurate information to ex-offenders in Allegheny

County about their voting rights.  Id. ¶ 10.  The ACLU, therefore, applied for, and received,

grants from several Pittsburgh area foundations to print placards and purchase advertising space

on buses and the Fund obtained grants to promote voter registration.  Id. ¶ 11.

Because they had seen many non-commercial advertisements on PAT buses and at

PAT bus stops in late 2005, Plaintiffs believed that they would be able to purchase space to run

voter-education messages on PAT buses.  Id. ¶ 12.  In late November of 2005, however, they

were surprised when Defendant Hickton told a representative of the Fund that PAT would not

run the Plaintiffs' voter-education advertisements because PAT only ran "commercial ads."  Id.

¶ 13.  At that time, the only information that Plaintiffs had provided to PAT was that the

sponsoring groups of the advertisements were the ACLU and the Fund and that the information

contained in the advertisements would provide accurate information regarding ex-offenders'

voting rights.  Id.

Plaintiffs and their attorneys then attempted to convince PAT to accept

advertisements that "educate citizens with regard to their right to vote in Allegheny County" in

a series of three letters dated January 25, February 24, and June 27 of 2006.  Id. ¶ 14.  PAT,

however, continued to refuse the Plaintiffs' requests and in a March 24, 2006 response letter

referred to its advertising policy and reiterated that it accepted only "commercial advertising."

Id. ¶ 15.  That policy, which Plaintiffs attached to their initial Complaint, includes a provision

stating that "Port Authority will not accept advertisements that are non-commercial."  Compl.,

Ex. 1 (PAT Advertising Policy).

    Plaintiffs allege that the "incongruity between the policy . . . and the non-commercial

advertisements routinely observed on PAT buses" led their counsel to review PAT's advertising

contracts for the previous three years.  Am. Compl. ¶ 17.  They allege that their review showed

that PAT's actual practice "has been to accept and run numerous non-commercial, public-

service and issue advertisements."  Id. ¶ 18.  Plaintiffs specifically note that PAT has recently

run an advertisement by a local non-profit organization, the "Just Harvest Education Fund,"

informing low-income citizens of their rights to certain tax credits, an advertisement by another

501(c)(3) organization, the Women's Law Project, inviting people to call for free legal advice if

they believe their rights have been violated, and an advertisement co-sponsored by the

Pittsburgh Human Relations Commission and the Fair Housing Partnership, a local non-profit

organization that fights discrimination and promotes fair-housing practices, stating that

"Housing discrimination is illegal. We can help."  Id. ¶ 19.  Plaintiffs also allege that PAT has

accepted advertisements sponsored by a number of other non-profit organizations and asserts

that "some" of these ads were non-commercial.  Id. ¶ 20.  Finally, Plaintiffs allege that PAT

also appears to run "public-service-type advertisements that it sponsors," such as

advertisements which note the accomplishments of Rosa Parks, feature the text from Title VI of

the Civil Rights Act, promote an anti-littering campaign, provide information sessions about the MAGLEV project, and other "public education campaigns."  Id. ¶ 21.

Plaintiffs allege that PAT's widespread practice of accepting and running non-commercial advertisements, as evidenced by the advertisements noted above, indicates that by history and practice PAT has created a designated public forum for advertisements on its buses. They claim that the refusal of PAT and Defendant Hickton to run the ex-offender-voter-education advertisements in that public forum amounts to impermissible content-based discrimination and contend that Defendants have not shown that their decision to do so was narrowly tailored to promote a compelling government interest.  In the alternative, Plaintiffs assert that, even if PAT did not create a public forum, the refusal of the Defendants to run the ex-offender-voter-education advertisements despite having run similar non-commercial advertisements by other organizations amounts to viewpoint discrimination.  Plaintiffs, therefore, seek declaratory and injunctive relief and damages for the violation of their rights under the First and Fourteenth Amendments to the U.S. Constitution.

Defendants have filed the instant motions to dismiss.  They both contend that the Amended Complaint should be dismissed in its entirety because Plaintiffs lack standing to challenge the constitutionality of Defendants' refusal to run the Plaintiffs' advertisements and that the Plaintiffs' request for injunctive relief should be dismissed because the requested injunction is not a permissible remedy.  In addition, Defendant Hickton argues that he is entitled to qualified immunity as a matter of law.

## II. STANDARD OF REVIEW

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court accepts the well-pleaded factual allegations of the complaint as true, and draws all reasonable inferences therefrom in favor of the plaintiff. Armstrong Surgical Center, Inc. v. Armstrong County Memorial Hosp., 185 F. 3d 154, 155 (3d Cir. 1999), cert. denied, 530 U.S. 1261 (2000).  A claim should not be dismissed for failure to state a claim unless it appears beyond a doubt that the non-moving party can prove no set of facts in supports of its allegations which would entitle it to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  All allegations in the complaint and all reasonable inferences that can be drawn therefrom must be accepted as true and viewed in the light most favorable to plaintiffs.  Pennsylvania Nurses Ass'n v. Pennsylvania State Educ. Ass'n, 90 F.3d 797, 799-800 (3d Cir. 1996), cert. denied, 519 U.S. 1110 (1997).

Generally, "to the extent that [a] court considers evidence beyond the complaint in deciding a 12(b)(6) motion, it is converted to a motion for summary judgment." Anjelino v. New York Times Co., 200 F.3d 73, 88 (3d Cir. 1999).  However, in resolving a 12(b)(6) motion to dismiss, a court may look beyond the complaint to documents referenced in the complaint or which are essential to a plaintiff's claim and are attached to either the complaint or the defendant's motion.  Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).

In their Amended Complaint, plaintiffs incorporated six exhibits that were attached to the original Complaint.  Because these documents are referenced in the Amended Complaint or are essential to Plaintiffs' claims, the Court has considered these documents without the

necessity of converting the motion to dismiss into a motion for summary judgment.  Pension

Benefit Guar. Corp., 998 F.2d at 1196-97.


### III. DISCUSSION

*A. Plaintiffs' Standing*

Defendants allege that Plaintiffs lack standing to challenge the constitutionality of

PAT's refusal to run the ex-offender voting rights advertisement because they are not the proper

parties in this action.  The original Complaint listed the Plaintiffs as the ACLU and the

"Pittsburgh League of Young Voters."  Compl. at 1 ( Document No. 1 ).  However, the

Amended Complaint identifies the plaintiffs as the ACLU and the "Pittsburgh League of Young

Voters Education Fund" ("Fund").  In their Motion for Leave to File an Amended Complaint,

Plaintiffs explained that the amendment did not add a new party, but merely clarified the

complete name of the earlier listed plaintiff.  Mot. for Leave to File Am. Compl. at ¶ 2.

Plaintiffs explain in their Amended Complaint that the Fund is a 501(c)(3) non-profit

organization that works closely with another organization that is in fact named Pittsburgh

League of Young Voters.  That organization is a 501(c)(4) non-profit organization and is not a

plaintiff in this action.  Although these two organizations are "distinct entities," Plaintiffs

explain that they share the same mission and share office space in Pittsburgh.  Am. Compl. ¶ 4.

Id.

In their Amended Complaint, Plaintiffs allege that it was the ACLU and the Fund

that sought to purchase space to run voter-education messages on PAT buses.  Plaintiffs state

that they received their first refusal in November of 2005 when Defendant Hickton informed a

7

representative of the Fund that PAT would not run its advertisements.  Plaintiffs also assert that at the time when Defendant Hickton denied their request, PAT was only aware that the advertisements would provide accurate information and would be sponsored by  the ACLU and the Fund.

Defendants, however, allege that the February 24, 2006, letter that the ACLU sent to PAT regarding the voter-education messages expressly contradicts Plaintiffs' allegation that the ACLU and the FUND were the parties who attempted to contract with PAT.  See Compl., Ex. 2.

The referenced letter, which was on ACLU letterhead, was sent to Dennis Veraldi, Chief Executive Officer of PAT, and was signed by Witold J. Walczak, the Legal Director of the ACLU, and Mark L. Steinberger, the Cooperating attorney for the ACLU, both of whom are representing the plaintiffs in this action.  See  Am. Compl. at 10-11.  The relevant portions of the letter state:

> The American Civil Liberties Union of Pennsylvania ("ACLU"') has been retained to represent the League of Young Voters and the Coalition of Concerned Citizens ("CCC"), who are undertaking, as a service to the community,  to educate citizens with regard to their rights to vote in Allegheny County.  In connection with that public service, the League and the CCC believe it is important that ex-offenders who have paid their debt to society be made aware of their rights to vote in elections in Allegheny County.  In that regard they are posting various public service announcements in public places and believe that it would be helpful to purchase signs in the advertising space on or in PAT buses in Allegheny County.
>
> . . .
>
> On behalf of our clients, we request that PAT permit the League and Coalition to purchase public-service advertising of its campaign to educate voters regarding their voting rights on PAT buses at PAT's normal rates.  I understand that a Mr. Khari Mosley of the CCC has previously written to Mr. Hickton in a letter dated

8

January 25, 2006 expressing the organizations' desire to advertise in PAT buses,
but that Mr. Hickton declined the request in a subsequent phone conversation.

Comp., Ex. 2, at 1 (emphasis added).

Defendants argue that the ACLU's own statements in this letter clearly indicate that the real entities that asked PAT to run the voter-education advertisements were the League of Young Voters and the Coalition of Concerned Citizens and not the named plaintiffs here. Defendants assert that where the facts in an exhibit attached to the complaint contradict the allegations in the complaint, the Court should disregard the allegations in the complaint when construing the motion to dismiss.

Federal Rule of Civil Procedure 10(c) states that a "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." Therefore, "[w]hen reviewing a complaint, a court should consider not only the allegations contained in the complaint itself but also the exhibits attached to it which the complaint incorporates." ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859 (3d Cir. 1994).

Further, "[i]t is a well-settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend, 163 F.3d 449, 454 (7th Cir. 1998) (citing Graue Mill Development Co. v. Colonial Bank & Trust Co., 927 F.2d 988, 991 (7th Cir. 1991));  see also ALA, Inc., 29 F.3d at 859 n.8; Bell v. Lane, 657 F. Supp. 815, 817 (N.D. Ill. 1987)); Dykes v. Southeastern Pennsylvania Transp. Auth., 68 F.3d 1564, 1567 n.3 (3d Cir. 1995).  Thus, "[a] plaintiff may plead himself out of court by attaching documents to the complaint that indicate that he or she is not entitled to judgment."  Northern Indiana Gun

9

& Outdoor Shows, Inc., 163 F.3d at 455 (quoting In re Wade, 969 F.2d 241, 249 (7th Cir. 1992)).

The rule applies "where a plaintiff attaches documents and relies upon the documents to form the basis for a claim or part of a claim." Thompson v. Illinois Dept. of Professional Regulation, 300 F.3d 750, 754 (7th Cir. 2002); see also Northern Indiana Gun & Outdoor Shows, Inc., 163 F.3d at 455 ("A blanket adoption rule makes sense in the context of an attached contract or loan agreement because the contract represents an agreement between two or more parties to which the law binds them."). "When the exhibit, however, is not the subject of the claim, Rule 10(c) does not require a plaintiff to adopt every word within the exhibits as true for purposes of pleading simply because the documents were attached to the complaint to support an alleged fact." Id. at 455. Thus, for example, where a plaintiff attaches letters from a defendant merely to indicate that the letters were sent and the letters are not themselves the basis of the plaintiff's claim, the statements in the letters do not necessarily trump the allegations in the complaint. Id. at 455-56.

It appears to the Court that all of the cases upon which Defendants rely in support of their argument involved situations where the plaintiff's claim was based on the very documents that the defendant alleged contradicted their claims. See Ala Inc, 29 F.3d at 859 n.8 (citing Nishimatsu Const. Co., Ltd. v. Houston Nat. Bank, 515 F.2d 1200, 1206 (5th Cir 1975) (Plaintiff's allegations that he entered into a contract with defendant were contradicted by the contract.)); Dykes, 68 F.3d at 1567 n.3 (Court could rely on a Collective Bargaining Agreement where the plaintiff's complaint "while framed in constitutional terms, grows out of an alleged violation" of the Collective Bargaining Agreement.); Graue Mill Development Co. v. Colonial

Bank & Trust Company of Chicago, 927 F.2d 988 (7th Cir. 1991) (Plaintiff's claim that

defendant imposed an unlawful tying provision as part of a loan agreement was contradicted by

the provisions of the loan agreement); Lerman v. Rudolph, 198 A.2d 532 (Pa. 1964) (Plaintiff's

allegation that defendant was a party to the contract was expressly contradicted by the

provisions of the contract).

   The Court finds, however, that Plaintiffs' claims in the instant case are not based on

the February 24, 2006 letter.  Plaintiffs have not placed the contents of the letter at issue, but

simply include the letter as an example of one of three letters that they sent, after the initial

refusal they received from Defendant Hickton, to attempt to convince PAT to run their ads.  See

Am. Compl. ¶ 14.  It is true that, unlike in Northern Indiana Gun & Outdoor Shows, Inc., the

letter here was written by representatives of one of the plaintiffs, the ACLU.  However, the

Defendants' suggested interpretation of the letter is both contradicted by and placed in context

by the allegations in the Amended Complaint.  See Thompson, 300 F.3d at 754-55 (An exhibit

governed where it was "part of the 'subject of the claim', and no contrary facts were alleged in

the actual complaint.").

   The Amended Complaint expressly states that the requesting parties were the Fund

and the ACLU.  It also explains that the Fund and the ACLU were a part of a coalition of

groups that planned to run the voter-education advertisements.  It states that a representative of

the Fund was first told that PAT would not run the ads and that at that time all PAT knew was

that the advertisement would be accurate and that the Fund and the ACLU were the sponsoring

organizations.  Thus, the references by the ACLU in the February 24, 2006 letter to the

Coalition of Concerned Citizens could be taken as meaning that the Coalition of Concerned

Citizens, of which plaintiffs were a part, was asking PAT to run advertisements that PAT already knew were to be specifically sponsored by the Fund and the ACLU.  This interpretation of the letter is explicitly supported by PAT in its March 24, 2006 response letter.  That letter indicates that PAT understood that the ACLU was itself requesting permission to post the ads. The letter addressed to the ACLU refers to "your request to place advertisements," to "the ACLU's proposed advertising," and to the "risk of accepting advertisements such as your own." Compl., Ex. 3, at 1-2.

Accordingly, the Court cannot conclude, therefore, on the basis of Plaintiffs' February 24, 2006, letter that it is beyond doubt that Plaintiffs can prove no set of facts in support of the allegations that they were the parties that requested PAT to run the advertisements at issue in this litigation.  This Court, therefore, will deny the Defendants' motions insofar as they allege that Plaintiffs lack standing to bring their claims.[1]

---

[1]     Because the Court concludes that plaintiffs can show at this stage of the proceedings that they are the parties that asked PAT to run the voter-education advertisements, this Court need not address the Defendants' arguments that the Fund and the ACLU were not entitled to assert standing on behalf of the Pittsburgh League of Young Voters simply because the Fund was associated with that organization and because the ACLU was retained as counsel by it.  This Court also need not address the Plaintiffs' alternate contention that they also have standing to challenge PAT's advertising policy because they can bring a facial challenge to the policy since it delegates unlimited discretion to PAT officials to decide which advertisements to run.  See Plaintiffs' Brief in Opposition to Defendants' Motions to Dismiss at 6-7.  However, the Court notes that, even though Plaintiffs may have standing to assert a facial challenge, they have not done so in their Amended Complaint.  The Amended Complaint challenges only the defendants *refusal* to run the plaintiffs' voter-education advertisements.  Thus, it only challenges the constitutionality of PAT's advertising policy *as applied* to Plaintiffs.

*B.  Permissibility of Request Injunctive Relief*

Defendants also ask this Court to dismiss the Plaintiffs' request for the Court to "[e]njoin PAT from refusing to accept and display plaintiffs' advertisements on terms no less favorable than those given to other advertisers, particularly the Women's Law Project, the Fair Housing Partnership and Just Harvest." Am. Compl. at sec F., para. c.

Defendants argue that the requested injunction is overly broad as a matter of law because, rather than prohibiting only the alleged unconstitutional conduct at issue in this lawsuit, it would require Defendants to "accept any other advertisement that either Plaintiff wants to run in the future."  PAT Mot. to Dis. Am. Compl. at 3; Hickton Mot. to Dis. Am. Compl. at 4.  Plaintiffs respond that the requested injunctive relief is well within this Court's authority.  They also respond that their requested injunction would simply require PAT to consider the Plaintiffs' advertisements on the same terms as PAT views advertisements from other organizations thereby ensuring that PAT does not engage in content or viewpoint discrimination.  Further, Plaintiffs note that the Court has the discretion to grant whatever injunctive relief it deems appropriate, regardless of what is specifically requested by Plaintiffs.

District courts are given broad "leeway to fashion effective remedies to correct offenses to the Constitution."  Ameron, Inc. v. U.S. Army Corps of Engineers, 787 F.2d 875, 887 (3d Cir. 1986).  This includes, "the power to enjoin related unlawful acts which may fairly be anticipated from the defendants' conduct in the past."  U.S. v. Spectro Foods Corp., 544 F.2d 1175, 1180 (3d Cir. 1976).  However, "[i]n granting injunctive relief, the court's remedy should be no broader than necessary to provide full relief to the aggrieved plaintiff."  McLendon v. Continental Can Co.,  908 F.2d 1171, 1182 (3d Cir. 1990).

13

Defendants argue here that the Plaintiffs' requested injunctive relief is too broad because Plaintiffs only "allege that Port Authority violated the First Amendment by refusing to run a single, specific advertisement."  PAT Mot. to Dis. Am. Compl. at 3; Hickton Mot. to Dis. Am. Compl. at 4.  Plaintiffs' Amended Complaint, however, suggests otherwise.  Plaintiffs initially identify their complaint as a challenge to PAT's refusal to accept their "educational bus advertisements," the exact specifics of which were not yet identified.    Am. Compl. ¶ 1, 13. Plaintiffs also allege that they desired to "purchase advertising space to run voter-education messages," as part of a project by a coalition of groups.  Id. ¶ 12.  They allege that Defendant Hickton told them "the project could not run its ads because PAT runs only 'commercial ads.'" Id. ¶ 13.  They allege that they then sent three letters to PAT by which they "attempted to convince PAT to accept advertisements" related to the voter-education project.  Id. ¶ 14. Plaintiffs also refer numerous times to PAT's refusal to accept or run plaintiffs' "advertisements."  Id. ¶¶ 24, 26-29, sec. F, paras. a, c."[2]  Thus, the Amended Complaint can reasonably be read to challenge a broader refusal on the part of PAT to sell *any* advertising space to plaintiffs for *any* advertisement relating to their ex-offender-voting-rights project.  It

---

[2]      The Amended Complaint does include three references to an "ad."  See Am. Compl. ¶¶ 1, 14.  It refers to "PAT's discrimination against the ex-offender-voting-rights ad" as being impermissible, id. ¶ 1, notes that "the agency's rejection of the ex-offender-voting rights-ad is unreasonable," id., and argues that "[t]he only information made know to PAT was . . . that the ad would provide accurate information about ex-offenders' voting rights."  Id. ¶ 13.  However, the numerous other references to "advertisements" and, in particular, the references in the "Claims" section of the Amended Complaint indicate that the Amended Complaint was intended to challenge more than the refusal of PAT to run one advertisement.  Even if the references to an "ad" are not mistakes, they at the most indicate that Plaintiffs sought permission from PAT to run an initial "ad" as part of their effort to have PAT run a number of "advertisements" related to the voter-education initiative.

also can be read to indicate the desire on the part of Plaintiffs to run a number of advertisements as part of their voter-education project.

Plaintiffs, however, do not merely request an injunction requiring PAT to run any advertisement related to their voter-education initiative.  They explain that "plaintiffs free-speech rights will continue to be violated until and unless this Court enjoins PAT from engaging in content and viewpoint discrimination against plaintiffs' purchase of advertisements similar to those displayed by PAT for other organizations." Id. ¶ 14.  Plaintiffs thus ask for an injunction enjoining PAT generally from "refusing to accept and display plaintiffs' advertisements on terms no less favorable than those given to other advertisers." Id. at sec.  F, para. c.

Contrary to Defendants' assertions, the injunctive relief requested by Plaintiffs is not unprecedented, particularly where the forum at issue is found to be a designated public forum. In Gregoire v. Centennial School Dist., 674 F. Supp. 172 (E.D. Pa. 1987), aff'd, 853 F.2d 917 (3d Cir. 1988) (table), a religious organization sought a preliminary injunction against a public school district that refused to rent the organization a high school auditorium to hold a religious event.  The district court found that the school district created a designated public forum at the school and had no compelling reason to deny the organization access. Id. at 179.  It then proceeded not only to enjoin the school district from barring the organization from holding the specific event, but also generally enjoined the school district "from refusing to rent public school facilities within . . . [the school district] to groups or individuals solely because of the religious content of their speech." Id. at 179-80. Similarly, in Planned Parenthood Ass'n/Chicago Area v. Chicago Transit Auth., 767 F.2d 1225 (7th Cir. 1985), a non-profit

15

organization sued a transit authority for twice refusing to rent space in its advertising system to the organization for specific advertisements.  Id. at 1227.  The district court entered an order declaring the transit authority's refusal unconstitutional and also permanently enjoined it from refusing to rent space to the non-profit organization for its advertisements.  Id. at 1228.  After concluding that the advertising system had become a public forum, the Court of Appeals for the Seventh Circuit upheld the broad injunction.  Id. at 1234.

Thus, in Gregoire the district court issued an injunction that protected not only the plaintiff organization, but also protected *any* organization from similar constitutional violations. And, in Planned Parenthood Ass'n/Chicago Area the district court upheld an injunction that ordered the transit authority to rent space to the plaintiff organization not only for the specific ads that were rejected, but for *any* ad that the plaintiff wished to publish.  It appears that the Plaintiffs in the case *sub judice* seek an injunction that would operate like that in Planned Parenthood Ass'n/Chicago Area which would apply to all future requests by Plaintiffs to rent space for ads.  Plaintiffs' request, however, does not appear to be as expansive as that in Gregoire because it would not apply to any organization.

Thus, the relief requested by Plaintiffs here is not unprecedented.  A district court should not dismiss a claim for injunctive relief at this early stage of the proceedings when such relief could prove to be appropriate.  See In re K-Dur Antitrust Litigation,  338 F. Supp. 2d 517, 550 (D. N.J. 2004) ) ( Where "equitable relief could prove to be an appropriate remedy . . . [t]his Court is loathe at . . . [the motion to dismiss] stage in the proceedings to curtail its broad equity powers to fashion the most complete relief possible. In short, while this Court may

ultimately agree with Defendants that claims for injunctive relief are inappropriate, dismissal at

this stage of the proceedings would be premature.").

      Moreover, even if this Court were to reject the particular injunctive relief requested

by Plaintiffs, this Court would still be entitled to grant Plaintiffs injunctive relief in some other

form.[3]  Thus, this Court will deny Defendants' motion to dismiss Plaintiffs' request for

injunctive relief.[4]

---

[3]      Federal Rule of Civil Procedure Rule 54(c) states that "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings."  See also Faison v. Sex Crimes Unit of Philadelphia, 845 F. Supp. 1079, 1085 (E.D. Pa. 1994) ("Although the Court is precluded from granting plaintiffs' particular request for injunctive relief, the Court is not foreclosed from awarding plaintiffs some form of injunctive relief should they prevail on the merits of their claims. It is well-established that, where federally secured rights are invaded, the federal courts have broad authority to tailor their remedies to grant the necessary relief."); Bell v. Hood, 327 U.S. 678, 684-85 (1946) ("[W]here federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief. And it is also well settled that where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done." (footnotes omitted)); U.S. v. White County Bridge Commission, 275 F.2d 529, 534-35 (7th Cir. 1960) (A district court has the power to grant injunctive relief to which a party is entitled even if it has not been specifically requested).

[4]      The parties also argue over the proper categorization of the requested relief and the affect it would have on this Court's determination. Plaintiffs argue that the case law cited by defendants shows that injunctions "*restraining*" speech must be narrowly tailored, but "[t]here is no legal authority to support defendants' contention that the relief that plaintiffs seek – essentially an injunction *allowing* them to speak in a particular forum – must be narrowly tailored."  Plaintiffs' Brief in Opposition to Defendants' Motions to Dismiss at 9-10.  Defendants in turn respond than the requested injunction here is a mandatory injunction which carries an even higher burden that the ordinary injunction restraining speech.  See Local 32B-32J, Service Employees Intern. Union, AFL-CIO v. Port Authority of New York and New Jersey,  944 F. Supp. 208, 214 (S.D. N.Y. 1996) ("[T]he movant is

(continued...)

### C.  Qualified Immunity

Defendant Hickton also asserts that he is entitled to qualified immunity as a matter of law on Plaintiffs' claims.  He contends that Plaintiffs' complaints are against PAT and its practice of permitting non-commercial advertising on its buses, not any conduct by Hickton, individually.  Plaintiffs respond that "Defendant Hickton is legally responsible for his own conduct as a state actor.  Additionally, and in light of defendants' practice of accepting and posting other civil rights, public service, and public education advertisements, Defendant Hickton's refusal to accept plaintiffs' non-partisan voting rights advertisements is violative of clearly established First and Fourteenth Amendment rights."  Pl's Resp. at 11.

The doctrine of qualified immunity provides "government officials performing discretionary functions . . . [a shield] from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  To determine whether a particular defendant is entitled to the protections of qualified immunity, the Court must first determine whether a constitutional violation has occurred.  Saucier v. Katz, 533 U.S.

---

<sup>4</sup>(...continued)
    required to meet a higher standard where the injunction would alter the status quo by commanding a defendant to perform a positive act.").

    Plaintiffs characterization of the injunction as "allowing" them to speak in a particular forum fails to recognize that, in allowing them to so speak, this Court must require Defendants to affirmatively act.  It is not clear, however, that the injunction here must be construed as mandatory.  See, e.g., Phillip v. Fairfield University, 118 F.3d 131, 133-34 (2d Cir. 1997).  Regardless, as the Court has noted above the relief requested here is not unprecedented and need not enter into a debate over the proper categorization of the requested relief.  It is enough to note that the ability to award mandatory injunctions is well within this Court's discretion.  See Moor v. Texas & N. O. R. Co., 297 U.S. 101, 105 (1936).

194, 201 (2001).  Then, the Court must determine if the constitutional right at issue was clearly

established at the time of the alleged violation.  Id.; see also Wright v. City of Philadelphia, 409

F.3d 595, 601 (3d Cir. 2005).  "As a general matter, a right is clearly established for purposes of

qualified immunity when its contours are sufficiently clear that a reasonable official would

understand that what he is doing violates that right."  Williams v. Bitner, 455 F.3d 186, 191 (3d

Cir. 2006).  Qualified immunity is an objective question to be decided by the Court as a matter

of law.  Doe v. Groody, 361 F.3d 232, 238 (3d Cir. 2004).  Further, the United States Supreme

Court has repeatedly stressed the importance of resolving immunity questions at the earliest

possible stages of litigation.  Curley v. Klem, 298 F.3d 271, 277 (3d Cir. 2002).  However, a

decision on qualified immunity would "be premature when there are unresolved disputes of

historical fact relevant to the immunity analysis."  Wright v. City of Philadelphia, 409 F.3d at

599 (quoting Curley, 298 F.3d at 278).

As discussed earlier, Plaintiffs have alleged that Defendant Hickton violated their

rights under the First and Fourteenth Amendment.  However, many of the facts relevant to

determining whether a reasonable official in Defendant Hickton's position would have known

that his conduct was unlawful are unresolved.  For example, the circumstances surrounding and

considerations governing Defendant Hickton's decision to reject Plaintiff's voting-rights

advertisement, while permitting the Fair Housing Project and Women's Law Project to post

anti-housing discrimination and gender-rights advertisements are not in the record before the

Court.

Although Defendant Hickton may indeed be entitled to qualified immunity, this

question is at least in part based on facts which have not been developed of record to date.

Therefore, the Court finds and rules that it would be premature for the Court to grant or deny qualified immunity and Defendant Hickton's motion to dismiss on qualified immunity grounds will be denied at this time.

### CONCLUSION

For the reasons hereinabove set forth, the Motion to Dismiss filed by PAT and the Motion to Dismiss filed by Defendant Hickton will be denied.  An appropriate Order follows.

McVerry, J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| PITTSBURGH LEAGUE OF YOUNG | ) | |
| VOTERS EDUCATION FUND and | ) | |
| AMERICAN CIVIL LIBERTIES | ) | |
| FOUNDATION OF PENNSYLVANIA, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 02: 06cv1064 |
| | ) | |
| PORT AUTHORITY OF ALLEGHENY | ) | |
| COUNTY; and ANTHONY J. HICKTON, | ) | |
| Director of Sales, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER OF COURT**

**AND NOW**, this 30th day of March, 2007, in accordance with the foregoing

Memorandum Opinion, it is hereby **ORDERED, ADJUDGED AND DECREED** as follows:


(i)      The Motion to Dismiss Plaintiffs' Amended Complaint Pursuant to Federal

Rule of Civil Procedure 12(b)(6) filed by Defendant, Port Authority of Allegheny County, is

**DENIED;** and


(ii)      The Motion to Dismiss Plaintiffs' Amended Complaint Pursuant to Federal

Rule of Civil Procedure 12(b)(6) filed by Defendant, Anthony J. Hickton, is **DENIED**.

Defendants shall file their respective Answers to the Amended Complaint on or before **April 13, 2007.**

BY THE COURT:

s/Terrence F. McVerry
United States District Court Judge

cc:      Jon Pushinsky, Esquire
Email: jonpush@aol.com

Marc L. Sternberger, Esquire
Email: strnbrgr@andrew.cmu.edu

Witold J. Walczak, Esquire
Email: vwalczak@aclupgh.org

Christopher J. Hess, Esquire
Email: chess@portauthority.org

Gregory J. Krock, Esquire
Buchanan Ingersoll & Rooney
Email: gregory.krock@bipc.com

Joseph E. Starkey, Jr. , Esquire
Port Authority of Allegheny County
Email: jstarkey@portauthority.org

Michael J. Cetra, Esquire
Port Authority of Allegheny County
Email: mcetra@portauthority.org