**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| PITTSBURGH LEAGUE OF YOUNG | ) | |
| VOTERS EDUCATION FUND and | ) | |
| AMERICAN CIVIL LIBERTIES | ) | |
| FOUNDATION OF PENNSYLVANIA, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 02: 06-cv-1064 |
| | ) | |
| PORT AUTHORITY OF ALLEGHENY | ) | |
| COUNTY and ANTHONY J.  HICKTON, | ) | |
| Director of Sales, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is the PETITION FOR AWARD OF ATTORNEY'S FEES

BY PITTSBURGH LEAGUE OF YOUNG VOTERS EDUCATION FUND AND AMERICAN

CIVIL LIBERTIES FOUNDATION OF PENNSYLVANIA ("League and ACLU") (Document

No. 130), with attached Declarations from counsel Jon Pushinsky, Sara J. Rose, and Witold J.

Walczak (Document No. 130-1, 2, 3, 4).  Defendant Port Authority of Allegheny County and

Anthony J. Hickton (collectively "Port Authority") filed OBJECTIONS TO PETITION FOR

AWARD OF ATTORNEY'S FEES, with attached Declaration from counsel Gregory J. Krock

(Document No. 133), to which the League and ACLU filed a REPLY BRIEF (Document No.

136) with, *inter alia*, four (4) Declarations of  attorneys practicing in Pittsburgh.

Port Authority also filed a MOTION TO STRIKE EXHIBITS TO REPLY TO

DEFENDANTS' OBJECTIONS TO PETITION FOR ATTORNEYS' FEES (Document No.

137), to which the League and ACLU have responded (Document No. 138).

The Fee Petition and Motion to Strike have been fully briefed and are ripe for disposition.

Facts and Procedural History

The parties and the Court are familiar with the extensive background of this litigation and such has been summarized in the opinions of the United States Court of Appeals for the Third Circuit and this Court. *See Pittsburgh League of Young Voters Educ. Fund v. Port Auth. of Allegheny Cnty.*, 653 F.3d 290 F.3d 290 (3d Cir. 2011); *Pittsburgh League of Young Voters Educ. Fund v. Port Auth. of Allegheny Cnty,* No. 02:06-cv-1064, 2009 WL 2366455 (W.D. Pa. July 30, 2009). However, the following is a brief recitation of the procedural facts salient to the issues presently pending before the Court.

Plaintiffs, Pittsburgh League of Young Voters Education Fund ( the "League") and American Civil Liberties Foundation of Pennsylvania ("ACLU"), brought this lawsuit on August 10, 2006 by filing a complaint pursuant to 42 U.S.C. § 1983 in which they alleged that defendants, Port Authority of Allegheny County and Anthony J. Hickton, Director of Sales (collectively referred to as "Port Authority") violated their rights under the First and Fourteenth Amendments to the United States Constitution by refusing to accept and display their proposed ex-offender voter-education advertisements. The League and ACLU advanced two (2) alternative legal theories in support of their First Amendment claim: (i) that the advertising space on city buses was a public forum, and rejection of the advertisement was impermissible content-based discrimination; and (ii) that the rejection of the advertisement constituted viewpoint discrimination. In their prayer for relief, the League and ACLU sought declaratory and injunctive relief, as well as damages, costs, and attorneys' fees.

The parties filed cross motions for summary judgment.  Port Authority filed a motion for summary judgment in which it contended that it was entitled to judgment as a matter of law because (i) the advertising space on Port Authority's vehicles constitutes a non-public forum and Port Authority reasonably exercised its right to restrict political and non-commercial advertisements on its vehicles and (ii) Port Authority's rejection of the advertisements was viewpoint neutral because it did not accept advertisements with contrary viewpoints.

The League and ACLU filed a motion for partial summary judgment in which they argued  that they were entitled to judgment as a matter of law on the issue of the defendants' liability because (i) Port Authority designated its bus-advertising space as a public forum, (ii) Port Authority acted unreasonably and committed viewpoint discrimination by refusing to run their advertisements despite having run similar advertisements in the past, and (iii) Port Authority's advertising policy was unconstitutionally vague.

The Court granted the Port Authority's motion in part, concluding that its city buses were not a public forum and rejection of the advertisement was not content-based discrimination.  However, the Court denied the parties' cross-motions for summary judgment with respect to viewpoint discrimination.  After a five-day bench trial, the Court ruled in favor of the League and ACLU and found that Port Authority's rejection of the advertisement amounted to viewpoint discrimination in violation of the First Amendment.   The Court enjoined Port Authority from refusing to accept an advertisement from the League and ACLU concerning ex-offender voting rights in Pennsylvania and awarded damages to the League in the amount of $1,064.74 and to the ACLU in the amount of $825.00.

Port Authority filed its notice of appeal on August 7, 2009.  The League and ACLU filed a notice of cross appeal.  Oral arguments were heard by the United States Court of Appeals for the Third Circuit on May 10, 2011.  On August 5, 2011, the court of appeals affirmed the Court's decision, finding that Port Authority's rejection of the ex-offender voting-rights advertisements was viewpoint discrimination, in violation of the League and ACLU's First Amendment rights.  The Court of Appeals entered judgment against Port Authority on September 2, 2011.[1]

Subsequently, the League and ACLU submitted a Petition for Attorney's Fees to the appellate court for fees and costs incurred in that court.  On January 24, 2012, the Court of Appeals adopted as the opinion of the Court the Report and Recommendation of United States Magistrate Judge Timothy R. Rice dated December 12, 2011.  The Petition for Award of Attorney's Fees was granted in part.  The League and ACLU were awarded $102,139.50 in fees and $100.67 in costs.

The League and ACLU also filed in this Court a Petition for Award of Attorney's Fees limited to the work performed by counsel for the League and ACLU that was related to the proceedings in this Court.

---

[1]     On appeal, the League and ACLU successfully defended the Court's finding of viewpoint discrimination, which entitled them to complete relief.  The court of appeals, therefore, did not examine the alternative legal theories that also could have supported the League and ACLU's First Amendment claim.

<u>Discussion</u>

The Court will address the Motion to Strike first and then proceed to address seriatim each of Port Authority's objections to the fee petition.

A.        <u>Motion to Strike</u>

Port Authority argues that "it takes issue with the ACLU's belated attempt to offer new exhibits in support of the reasonableness of its fees to replace the insufficient exhibits that it provided with the Fee Petition." *Mot. to Strike* at 3.

The Court notes that in the fee petition the League and ACLU explicitly reserved the right to provide additional support for the reasonableness of their attorneys' hourly rates, to the extent the Port Authority objected to some or all of them.  Fee Pet. at 38.[2]  In its response to the fee petition,  Port Authority did not raise any objection to the request of the League and ACLU to provide additional support if needed.  Further, Port Authority fails to identify the arguments it considers new and offers no explanation as to why it is improper for the Court to consider any of the arguments advanced by the League and ACLU in response to the Port Authority's fee award objections.

---

[2]        Paragraph 38 of the fee petition contains the following reservation of rights and request:

In an effort to minimize the expenditure of additional time, fees, and expenses, the League and ACLU have not included in this submission supporting affidavits from community lawyers because the process of soliciting those testimonials can be time-consuming, thus driving up fees.  Accordingly, the League and ACLU respectfully request that they be given an opportunity to submit the requisite affidavits to support rates that Port Authority and Hickton may contest (and of course the League and ACLU will not object to defendants having an opportunity to respond thereto).

The Court finds Port Authority's position to be without merit.  Supplemental submissions are common practice in fee litigation.  *See, e.g., Best Med. Int'l, Inc. v. Accuray, Inc.*, No. 2:10-cv-1043, 2011 WL 5569506, at *1 (W.D. Pa. Nov. 16, 2011) (accepting a reply brief "with sealed supplemental Declarations" and a sur-reply brief); *Adm'x of Estate of Conway v. Fayette Cnty. Children & Youth Servs.*, No. 08-0823, 2011 WL 3862394, at *1 (W.D. Pa. Aug. 31, 2011) (accepting a reply brief including supplemental exhibits), *opinion vacated by* 2012 WL 173888 (W.D. Pa. Jan. 17, 2012).

Accordingly, the Court finds that the arguments advanced by Port Authority do not warrant the exclusion of the challenged exhibits.  The Motion to Strike, therefore, will be denied.

B.    <u>Reasonableness of Fees and Costs</u>

In a recent opinion in *NFL Properties LLC v. Wohlfarth*, 2011 WL 1402770 (W.D. Pa. 2011), this member of the Court thoroughly articulated the standards which govern fee petitions in this circuit.  Briefly summarized, the burden to establish reasonableness is on the party seeking an award of fees.  The Court must first calculate a lodestar rate by multiplying a reasonable hourly rate in the relevant (Pittsburgh) legal community by the reasonable number of hours expended.  Once the lodestar amount has been calculated, a court has discretion to adjust the fee upward or downward, based on a variety of factors.  District courts are instructed to conduct a "thorough and searching analysis" of the fee application.  A prevailing party may only recover for time reasonably expended and the Court must exclude time that was excessive, redundant or unnecessary.  As the hourly rate demanded goes up, there should be a

corresponding decrease in the amount of time required to accomplish necessary tasks, due to counsel's experience and expertise.  Time that would not be billed to a client cannot be imposed on an adversary.  *See generally NFL Properties*, 2011 WL 1402770 at * 2-5.

Counsel for the League and ACLU originally filed a fee petition in which they requested $348,550.00 in legal fees and  $7,806.35 in costs.  Port Authority objected to the Fee Petition, and in response, the League and ACLU filed a Fee Reply, in which they request an additional $3,385.00 in legal fees.  In sum, the total amount of fees requested by counsel for the League and ACLU is $351,935.00, including the fees requested in the original Fee Petition and the fees requested in the Fee Reply.  The total amount of costs requested by counsel for the League and ACLU is  $7,806.35.  The combined requested fees and expenses total $359,741.35.

Port Authority does not dispute that the League and ACLU are prevailing parties, nor does it challenge the hourly rates of Mr. Pushinsky or Mr. Sternberger.[3]  Port Authority does, however, challenge (i) the hourly rates of Mr. Walczak and Ms. Rose; (ii) the number of hours billed by all four attorneys; (iii) reimbursements sought for local travel expenses and copy expenses in response to a Right to Know request; and (iv) the degree of success achieved by the League and ACLU.

Port Authority argues that the attorneys' fees and costs sought by the League and ACLU are "staggering."  Fee Obj. at 2.  Port Authority bases its claims largely on comparisons to its own counsels' fees, as well as a recent trial court opinion which reduced both the rates and hours claimed by Mr. Walczak and Ms. Rose.  The Court notes, however, that the opinion relied

---

[3]   In March, 2008, Mr. Sternberger tragically died during the course of this litigation. He was a sole practitioner who concentrated in litigation, domestic relations, business law, and arts and entertainment law.  At the time of his death, he billed his private-practice clients at the hourly rate of $200.  Fee Pet. at ¶ 30.

upon by the Port Authority, *Adm'x of Estate of Conway v. Fayette Cnty. Children & Youth Servs.*, No. 08-0823, 2011 WL 3862394, at *1 (W.D. Pa. Aug. 31, 2011), was vacated on January 17, 2012, pursuant to a settlement agreement by the parties. *See Adm'x of Estate of Conway v. Fayette Cnty. Children & Youth Servs.*, No. 08-0823, 2012 WL 173888, at *1 (W.D. Pa. Jan. 17, 2012).

Although the Court finds that the League and ACLU have not established that all rates and hours claimed in their fee petition are reasonable, the Court finds that Port Authority similarly has failed to demonstrate that the significant reduction it is seeking is appropriate.

1. <u>Hourly Rates</u>

A reasonable hourly rate is to be calculated in accordance with the "prevailing market rate" in the "relevant community." The United States Court of Appeals for the Third Circuit embraces the "forum rate rule," in which the relevant community is generally the forum in which the suit was filed. *Interfaith Community Org. v. Honeywell Intern., Inc.,* 426 F.3d 694, 703-05 (3d Cir. 2005). The relevant rate is to be calculated at the time of the fee petition, rather than the rate at the time the services were actually performed. *Lanni v. New Jersey*, 259 F.3d 146, 149 (3d Cir. 2001). The Court must base its decision on the record, rather than a generalized sense of what is customary or proper. *Coleman v. Kaye,* 87 F.3d 1491, 1510 (3d Cir. 1996). The rate should take into account prevailing counsel's skill and experience, the nature and complexity of the matter at issue, and should be evaluated with reference to the rates charged by comparable practitioners in the community. *Rode v. Dellarciprete*, 892 F.2d 1177,

1183 (3d Cir. 1990).  A reasonable fee is sufficient to attract competent counsel, but does not

produce a windfall for the attorneys.

The League and ACLU seek the following hourly rates for their attorneys:

| NAME | HOURLY RATE |
|------|-------------|
| Jon Pushinsky | $375.00 |
| Sara J. Rose | $325.00 |
| Witold Walczak | $500.00 |
| Marc Sternberger | $200.00 |
| Alexandra Morgan-Kurtz | $200.00 |

Initially, the League and ACLU supported their requested hourly rates with declarations  from

counsel Jon Pushinsky, Sara J. Rose, and Witold J. Walczak, citations to other cases in which

similar rates were awarded to attorneys with comparable skill and experience, and a case from

early 2010 in which Mr. Walczak and Ms. Rose were awarded fees at rates $50 lower than the

rates claimed here.  After Port Authority objected to the rates of Mr. Walczak and Ms. Rose,[4]

the League and ACLU supplemented their petition with additional citations to fee awards in

other cases and declarations from four (4) respected Pittsburgh attorneys who each attested that

the requested rates are reasonable in light of the attorneys' skill and experience and accurately

---

[4]     Port Authority does not object to the hourly rates of either attorney Jon Pushinsky
or attorney Marc Sternberger.  The Court finds that given the skill and experience
of these two attorneys and in light of the declarations submitted, the Court will
compensate the League and ACLU for Mr. Pushinsky's services at his stated rate of
$375.00 / hour and  for Mr. Sternberger's services at his stated rate of $200.00/
hours.  Port Authority also did not object to the hourly rate of Alexandra Morgan-
Kurtz.  However, as discussed, *infra,* the Court will *sua sponte* reduce Ms. Morgan-
Kurtz's hourly rate.

reflect the market price for lawyers in this region with similar experience, skill, and reputation in cases involving complex federal litigation.  *See* Reply, Exhibits 1 - 4.

Port Authority argues that Mr. Walczak's hourly rate should be reduced from $500 to $375, "the same $375 per hour rate applicable to their lead counsel, Mr. Pushinsky," Fee Obj. at 9,  and that Ms. Rose's hourly rate should be reduced from the "staggering" request of $325 per hour to $205 per hour, "a rate . . . reasonable for the relatively straightforward First Amendment claim in this case . . ."  Fee Obj. at 10.

Port Authority suggests that Mr. Walczak's hourly rate should be reduced because Mr. Walczak served as "a witness rather than legal counsel" and that Mr. Pushinsky served as Plaintiffs' lead counsel throughout the litigation.    A review of Mr. Walczak time sheets reflects that while, he did testify at trial to rebut the testimony of former Port Authority general counsel Christopher Hess, he also played an integral role in the early stages of this litigation, including having telephone calls with Port Authority's general counsel and assisting with drafting and finalizing the Complaint and motion for temporary restraining order which were filed in this case.

As the Report and Recommendation adopted as the opinion of the United States Court of Appeals noted, "Mr. Walczak's formidable skill and experience in the area of civil rights litigation are apparent from his resume and the declarations of attorneys Robert J. Cindrich, Timothy P. O'Brien, Michael P. Malakoff, and Ellen Doyle."  R&R, at 12.    However, as was the case with Mr. Walczak's role in the appeals process, his role in this litigation was limited, with Mr. Pushinsky acting as lead counsel and Ms. Rose working directly with Mr. Pushinsky.

Notwithstanding his limited role, Port Authority has failed to establish that Mr. Walczak should be bound by Mr. Pushinsky's rate - which is not contested.   However, as found in the Report and Recommendation, "besides the declarations, no evidence has been offered demonstrating Mr. Walczak – or other non-lead counsel in a civil rights action - - has been awarded the $500 per-hour-rate he seeks."  Accordingly, the Court will reduce Mr. Walczak's rate to $475, the same rate found reasonable by our court of appeals.[5]

Ms. Rose's skill and expertise in the area of civil-rights litigation are also apparent from her resume and its list of her "noteworthy litigation."  Port Authority argues that Ms. Rose's rate should be based on its own associate counsel's rate.  *See* Fee Obj. at 9-10 and n. 4. The Court finds this argument to be without merit.  However, the Court will reduce Ms. Rose's rate to $300, the same rate found reasonable by our court of appeals.

Finally, the League and ACLU seek compensation for work performed on the fee reply by Alexandra Morgan-Kurtz, an ACLU volunteer and recent law-school graduate who is not yet a licensed attorney.[6]  The League and ACLU claim that $200 is a reasonable hourly rate for the work performed by Ms. Morgan-Kurtz.  Port Authority did not respond to the fee reply and as a result have not objected to Ms. Morgan-Kurtz's rate.

The only evidence in support of Ms. Morgan-Kurtz's rate is her own declaration. Therefore, the Court finds that the League and ACLU have not made a prima facie showing that

---

[5]     The Court acknowledges that on January 25, 2012, Chief Judge Gary L. Lancaster awarded Mr. Walczak an hourly rate of $500.  *See Fross v. County of Allegheny*, No. 08-cv-1405, 2012 WL 242842 (W.D. Pa. Jan. 25, 2012).

[6]     According to her Declaration, Ms. Morgan-Kurtz graduated from the University of Virginia School of Law in 2011, began working at the ACLU on August 22, 2011, and passed the Pennsylvania bar on October 14, 2011.  At the time her Declaration was filed, she had not yet been admitted to the Pennsylvania bar.

a $200 hourly rate is reasonable for Ms. Morgan-Kurtz, an unlicensed law-school graduate.  The

Court finds that awarding Ms. Morgan-Kurtz a rate consistent with rates deemed reasonable for

experienced paralegals is a sensible outcome.  The Court, therefore, will reduce Ms. Morgan-

Kurtz's rate to $150, the same rate found reasonable by our court of appeals.

To summarize, the League and ACLU are entitled to recover reasonable counsel fees

at rates set forth in the following table, which reflect adjustments to the hourly rates, as discussed

above:

| NAME | APPROVED HOURLY RATE |
|---|---|
| Jon Pushinsky | $375.00 |
| Sara J. Rose | $300.00 |
| Witold Walczak | $475.00 |
| Marc Sternberger | $200.00 |
| Alexandra Morgan-Kurtz | $150.00 |

2.      Hours Billed

District courts are instructed to conduct a "thorough and searching analysis" of the fee

application.  *Interfaith Community*, 426 F.3d at 703 n.5.  A prevailing party may only recover for

time reasonably expended and the Court must exclude time that was excessive, redundant, or

unnecessary.  *Id.* at 711.  Time that would not be billed to a client cannot be imposed on an

adversary.  *Public Interest Research Group of New Jersey, Inc. v. Windall*, 51 F.3d 1179, 1188

(3d Cir. 1995).  The United States Supreme Court has established that the trial court has broad

discretion to reduce requests for fees and costs.  *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)

(observing that the trial court "has discretion in determining the amount of a fee award.  This is

appropriate in view of the [trial forum's] superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters.")

Combining the hours set forth in the fee petition with the additional time included in the fee reply, the League and ACLU seek compensation for a total of 991.0 hours as follows:

| Name | No. of Hours Reflected in Original Fee Petition | No. of Additional Hours Spent in Preparing Reply Brief | Total |
|---|---|---|---|
| Jon Pushinsky | 449.20 | 2.10 | 451.30 |
| Sara J. Rose | 381.80 | 3.50 | 385.30 |
| Witold J. Walczak | 88.65 | -- | 88.65 |
| Marc Sternberger | 58.45 | -- | 58.45 |
| Alexandra Morgan-Kurtz | -- | 7.30 | 7.30 |
| **TOTAL HOURS REQUESTED** | **978.10** | **12.90** | **991.00** |

Port Authority raises specific objections to nine (9) categories of hours billed by the League and ACLU attorneys. Each of Port Authority's objections will be addressed seriatim.


a.      *Time Spent on Withdrawn Motion for Temporary Restraining Order*

Attorneys Pushinsky, Rose, Walczak, and Sternberger billed a total of 45.35 hours, for a total of $18,187.50 for time spent researching, drafting, and revising the motion for temporary restraining order. The League and ACLU filed their Complaint (Document No. 1) and Motion for Temporary Restraining Order ("TRO") and/or Motion for Preliminary Injunction (Document No. 2) contemporaneously on August 10, 2006. The Court conducted a conference

on August 14, 2006 to discuss scheduling issues associated with the requested TRO.  On August

18, 2006, the League and ACLU moved to withdraw their request for TRO / Preliminary

Injunction without prejudice.  The motion to withdraw clearly stated the grounds for seeking to

withdraw the request, *to wit*:

> Based upon the legal work to be performed, advertisement production time
> and the parties' appeal rights, it does not appear that a final enforceable
> decision regarding Plaintiffs' claims can be obtained in time for Plaintiffs
> to effectively advertise their message regarding voters' rights prior to the
> close of voter registration preceding the November 2006 general election.

Mot. to Withdraw Request for Temporary Restraining Order / Preliminary Injunction Without

Prejudice, Document No. 8  at ¶ 3.

Port Authority contends that all legal fees "incurred in preparing a frivolous motion

for TRO that they withdrew within days after its filing" should be disallowed.  The Court finds

that the Port Authority's argument is without merit.  The Court does not agree that the motion

was withdrawn because it was frivolous.  Rather, the motion was withdrawn only after the

League and ACLU determined, after a conference with the Court and opposing counsel, that a

final enforceable decision regarding their claims could not be obtained prior to the close of voter

registration preceding the November 2006 general election.  Moreover, the time spent

researching the issues and preparing the motion required significant research, which was later

used by the attorneys for the League and ACLU in other aspects of the litigation.  Thus, Port

Authority's objection to time spent on the withdrawn motion for TRO will be denied.


   b.  *Time Spent in Responding to Port Authority's Motions to Dismiss*

Attorneys Pushinsky, Rose, Walczak, and Sternberger billed a total of 49.85 hours for

time spent in responding to the motions to dismiss filed by Port Authority.  First, Port Authority

points out that this time is 50% greater than the 33.9 hours that Port Authority's counsel incurred in conjunction with preparing the motions to dismiss. With that said, however, Port Authority states that it "was reasonable for Plaintiffs' counsel to spend 35 hours in responding to the motions to dismiss" and does not object to the time billed by Mr. Pushinsky (10.3 hours) or Ms. Rose (19.3), as lead counsel. Fee Obj. at 14. Port Authority also does not object to a portion of the time Mr. Sternberger billed; specifically, Port Authority agrees that 5.4 hours billed by Mr. Sternberger is reasonable, but argues that "the remaining time spent by Mr. Sternberger and all time spent by Mr. Walczak should be disallowed." Without much elaboration, Port Authority objects to Mr. Walczak's billed time because "[w]ith three other experienced attorneys spending more than 10 hours each on the briefs, it is inconceivable that Mr. Walczak - who claims that his experience warrants $500 per hour - needed to spend nearly 10 hours of his own time editing their work." Fee Obj. at 14.

The Court finds Port Authority's objections to be without merit. The legal issues presented in the motions to dismiss were complicated, involving *inter alia* issues of standing, permissibility of request for injunctive relief, and qualified immunity. The Court issued a twenty-two (22) page Memorandum Opinion and Order which denied the motions. The Court finds that the time spent by the League and ACLU attorneys was reasonable and necessary to avoid dismissal of their claims. Accordingly, Port Authority's objection to time spent on responding to the its motions to dismiss will be denied.


c.      *Time Spent on Written Discovery*

Third, Port Authority argues that the total billed hours of 35.25 that the attorneys for the League and ACLU spent in preparing and responding to written discovery is excessive.

15

Apparently, Port Authority agrees that Mr. Pushinsky's time is reasonable (24.6 hours), but objects to the remaining time incurred by Mr. Walczak (9.85 hours) and Mr. Sternberger (0.8 hours). Fee Obj. at 15.  Again in support of its argument, Port Authority bases its argument on a comparison to the time spent by its counsel - "Plaintiffs' counsel seek to recover . . . a whopping 68% more time than the 21 hours Port Authority's counsel spent preparing and responding to those same written discovery requests." Fee Obj. at 14-15.  Port Authority points to no specific aspect of any time recital of Mr. Walczak or Mr. Sternberger as being  objectionable.  The Court agrees with the League and ACLU that "the amount of time devoted to critical tasks by counsel for the losing parties is a poor measure of the time that was reasonably necessary for the prevailing parties' counsel to perform those same tasks." Fee Pet. at 14.

Furthermore, as the League and ACLU point out, their attorneys "had far more policy documents and advertisements to review" and personally reviewed the Port Authority's files for every bus advertisement purchased from it over an approximately five-year period.  Reply at 18, n. 37.

The Court has reviewed "line by line" the relevant entries on the three attorney's time sheets and finds that the entries related to written discovery are reasonable.  Accordingly, Port Authority's objection to time spent on written discovery will be denied.

d.      *Time Spent in Conjunction with Preparing For and Conducting Depositions*

Fourth, Port Authority objects to the total billed hours of 96.35 that Mr. Pushinsky and Mr. Sternberger billed  related to depositions taken in this case.  Port Authority states that "[t]hese hours exceed Port Authority's time by nearly 20%, because unlike Port Authority, Plaintiffs sent multiple attorneys to five (5) of the depositions taken in this case." Fee Obj. at 15.

16

Specifically, Port Authority argues that the 29.3 hours collectively billed by Mr. Pushinsky (9.7 hours) and Mr. Sternberger (19.6 hours) for time "spent observing the depositions that they neither conducted nor defended should be excluded as unnecessary and duplicative." Fee Obj. at 15.

In sum, Port Authority wants the Court to reduce the League and ACLU's fee award because Port Authority chose to staff this case at a level less than its adversary. Of course, numerical comparisons do not automatically decide the question. The key question is whether the staffing decisions of the League and ACLU were reasonable under the circumstances. The Court has reviewed the billing records submitted by Mr. Pushinsky and Mr. Sternberger, and based upon the complexity of this case and the obvious necessity for substantial manpower, the Court cannot say that the League and/or ACLU engaged in unreasonable or unnecessary duplicative effort. Accordingly, Port Authority's objection to the 29.3 hours that Mr. Pushinsky and Mr. Sternberger collectively billed for attending (5) depositions will be denied.

e.    *Time Spent in Summary Judgment Briefing*

Port Authority describes the 234.55 hours billed by attorneys for the League and ACLU as "staggering" as it is nearly 50% more than the time the Port Authority's counsel spent on briefing the same issues. Fee Obj. at 15-16. Port Authority suggests that "a reasonable number of hours for the summary judgment stage of the case is 175 hours." Fee Obj. at 15.

In this case, the parties filed cross motions for full or partial summary judgment. The motions were thoroughly researched and arguments were presented on the central issues of the litigation. The Court has reviewed the billing entries for time incurred on the summary judgment motions and briefing and finds that the time spent by the attorneys for the League and ACLU for

17

time spent in summary judgment briefing was not excessive.  The motion for summary judgment filed by Port Authority would have disposed of Plaintiffs' claims had it been granted in its entirety, and that significance was reflected in the thorough briefs and numerous exhibits filed by the League and ACLU.

Accordingly, the Port Authority's objection to time spent by attorneys for the League and ACLU on summary judgment briefing will be denied.

    f.    *Time Spent Associated With "Right to Know" Request*

Attorneys Pushinsky, Rose, Walczak, and Sternberger billed a total of 5.75 hours in regard to the Right to Know request sent to the Port Authority by the League and ACLU.  Port Authority seeks the elimination of the hours charged by counsel for the League and ACLU contending that "[a] right to know request is not a prerequisite to filing suit."  Obj. at 16. Plaintiffs respond that the results of the Right to Know request provided the League and ACLU with "essential information about other advertisements Port Authority had agreed to place on its buses, thereby providing the necessary factual support for plaintiffs' constitutional arguments." Fee Reply at 19.

The Court finds the objection of the Port Authority to be without merit.  The results of the Right to Know request were useful and of a type ordinarily necessary to secure the final result attained in this lawsuit.  Information about other advertisements Port Authority had agreed to place on its buses was an integral part of Plaintiffs' lawsuit and time spent thereon should be compensated.  Accordingly, the Port Authority's objection will be denied.

g.   *Time Spent for Internal Communications Among Plaintiffs' Counsel*

Port Authority argues that "Plaintiffs' attempt to recover fees for excessive and unreasonable internal communications among their four separate attorneys is outrageous" and "grossly excessive." Specifically, Port Authority objects to the "staggering" 53.75 hours for "'stand alone' internal conferences" in which the primary or only service noted on an invoice was an internal communication. Port Authority contrasts this with the " 'stand alone' internal communications that Port Authority's attorneys included on their invoices totaled 0.5 hours at a total value of $76.50." Fee Obj. 17.

The Court notes that although Port Authority describes the internal communications as occurring among four attorneys, there is no claim for fees for Mr. Sternberger beyond February 2007. Ms. Rose's involvement in the case dates back to January 2007. Except for a brief period in early 2007 when the participation of Ms. Rose overlapped with that of Mr. Sternberger, there are no more than three lawyers billing for time related to internal communications.

The Court recognizes that claiming a disproportionate number of hours for communication between attorneys may indicate unreasonable overstaffing such that a reduction in hours is appropriate. Here, however, the Court has conducted an independent review of time spent by attorneys for the League and ACLU in internal discussions and has determined that this time does not appear to be unreasonable. The internal communications occurred over five (5) years of litigation and included such events as preliminary research, the preparation of a complaint, a TRO motion, defending motions to dismiss, cross-motions for summary judgment, and a five-day non-jury trial. Accordingly, the Court will not reduce the hours spent on internal communications and the Port Authority's objection will be denied.

h.   *Time Spent for Performing Delegable Tasks*

Port Authority objects to the 7.1 hours bills collectively by Ms. Rose (6.3 hours) and Mr. Walczak (0.8 hours) for "performing administrative or secretarial-type services."[7] The Court of Appeals for the Third Circuit has cautioned that "when a lawyer spends time on tasks that are easily delegable to non-professional assistance, legal services rates are not applicable." *Planned Parenthood of Cent. New Jersey v. Attorney General of State of New Jersey*, 297 F.3d 253, 266 (3d Cir. 2002) (*quoting  Halderman by Halderman v. Pennhurst State School & Hosp.*, 49 F.3d 939,  942 (3d Cir. 1995).  The tasks at issue here involved revising a summary judgment brief, converting a brief to a PDF, electronically filing a brief, going with a volunteer to serve a subpoena, printing copies of ads, and compiling and updating timesheets.

The Court agrees with Port Authority and finds that each of the above described tasks are essentially clerical in nature and should not be billed at an attorney's rate to his or her client or his or her adversary.  Accordingly, the Court will deduct 6.3 hours from Ms. Rose's time and deduct 0.8 hours from Mr. Walczak's time.

---

[7]   On Page 12 of its Fee Objection, Port Authority lists the "ACLU hours" devoted to secretarial services as "7.8."  However, in its specific objections, Port Authority objects to the following billing entries, which total 7.1 hours:

| | | |
|---|---|---|
| Ms. Rose | 11/20/2007 | 2.0 hours |
| Ms. Rose | 11/20/2007 | 3.5 hours |
| Ms. Rose | 12/01/2007 | 0.3 hours |
| Ms. Rose | 12/03/2007 | 0.5 hours |
| Mr. Walczak | 11/3/2006 | 0.3 hours |
| Mr. Walczak | 04/19/2007 | 0.5 hours |

See Fee Obj. at 17.

i.      *Time Spent for Travel Time*

Port Authority's final objection to the hours billed by counsel for the League and ACLU is to the 2.4 total hours claimed by Mr. Walczak for his "local travel," time spent traveling from his office in Oakland to downtown Pittsburgh on three occasions, *to wit:* September 3, 2006;[8] May 10, 2007, and November 3, 2008.[9]

The League and ACLU respond that district courts have awarded attorney's fees for travel time and requests that this Court not reduce Mr. Walczak's hourly claim for local travel time.

With respect to reimbursement for travel time, district courts have awarded attorneys' fees at both full and reduced rates for travel time. *See Steward* v. Sears, Roebuck & Co., Civil Action No. 02-8921,  2008 WL 1899995, at * 6 (E.D. Pa. 2008) (finding that an attorney loses the opportunity to meet with other clients or perform other legal work when engaged in travel necessary to the case; comparing other courts' decisions related to reimbursement of travel time).[10] *See also Kurschinske v. Meadville Forging Co*., Civil Action No. 06-87, 2008 WL

---

[8]       Port Authority states that Mr. Walczak seeks to recover 0.8 hours for traveling to and from downtown Pittsburgh on "September 3,  2006."  However, upon review of Mr. Walczak's billing records, there is no entry for September 3, 2006.  There is an entry dated November 3, 2006 in which Mr. Walczak  reports "travel to/from d/t." The Court will assume that it is the November 3, 2006 entry to which Port Authority objects.

[9]       Likewise, Port Authority states that Mr. Walczak seeks to recover 0.8 hours for traveling to and from downtown Pittsburgh on "November 3, 2008."  However, upon review of Mr. Walczak's billing records, there is no entry for November 3, 2008.  There is an entry dated September 3, 2008 in which Mr. Walczak  reports "travel to/from d/t" (.8).  The Court will assume that it is the September 3, 2008 entry to which Port Authority objects.

[10]      Compare *Posa v. City of East Orange*, 2005 WL 2205786, at *5 (D.N.J. Sept.8,

continue..

4462294, at *4 (W.D. Pa. Sept.30, 2008) (reducing fees for travel time by two-thirds where the record did not reflect that the plaintiff was unable to obtain counsel within the forum).

Upon thoughtful consideration, the Court will deduct the entire amount billed by Mr. Walczak for traveling between his Oakland office and downtown Pittsburgh.  No other attorney in this case charged for traveling between their offices and downtown Pittsburgh and under those circumstances it would not be appropriate for Mr. Walczak to charge for that time. Accordingly, the Court will deduct 0.8 hours of time billed for local travel on November 3, 2006; 0.8 hours of time billed for local travel on May 20, 2007; and 0.8 hours of time billed for local travel on September 3, 2008, for a total of 2.4 hours.

To summarize, the League and ACLU are entitled to recover reasonable counsel fees as set forth in the following table, which reflects the adjustments to the hourly rate and hours billed, as discussed above:

---

[10]...continue
2005) (allowing travel time at fifty percent of hourly rate) and *Haberern v. Kaupp Vascular Surgeons, Ltd.*, 855 F. Supp. 95, 100 (E.D. Pa.1994 ) (reimbursement for attorney travel time allowed in this ERISA case at a 50% reduced hourly rate), *vacated in part on other grounds*, 24 F.3d 1491 (3d Cir. 1994), with *Arietta v. City of Allentown*, 2006 WL 2850571, at *5-6 (E.D. Pa. Sept. 29, 2006) (compensating travel time at full hourly rate and concluding that "[b]ecause an attorney who is traveling may not meet with other clients or perform other legal work, we find that it is appropriate that the attorney should be able to bill at his standard hourly rate") and *Rush v. Scott Specialty Gases, Inc*., 934 F. Supp. 152, 156 (E.D. Pa. 1996) (allowing travel time at full rate finding that "the attorney loses opportunity time by traveling to trial and should be compensated for that time as much as time spent otherwise on the client").

| NAME | APPROVED HOURS |
|---|---|
| Jon Pushinsky | 451.30 |
| Sara J. Rose | 379.00 |
| Witzold J. Walczak | 85.45 |
| Marc Sternberger | 58.45 |
| Alexandra Morgan-Kurtz | 7.30 |
| **TOTAL** | **981.50** |

3.       <u>Costs</u>

The League and ACLU seek to recover costs in the amount of $7,806.35.  The Port

Authority objects to two categories of requested costs:  local travel expenses and Right to Know

expenses.  These will be addressed seriatim.

The League and ACLU seek to recover $16.00 in unidentified "travel" expenses

associated with the case.   Port Authority objects to this request on the lack of any supporting

documentation in the fee petition which describes the nature of the expenses, and on its belief

that no travel expenses should arise "[b]ecause all proceedings took place in Pittsburgh where all

counsel are located."

In their Fee Reply, the League and ACLU explain that "Mr. Walczak and Ms. Rose

were required to travel to downtown Pittsburgh for meetings and court hearings in this case.  The

$16 represents a $14 parking charge by Mr. Walczak and a $2 bus fare by Ms. Rose."

In their Fee Petition filed with the court of appeals, the League and ACLU  requested

parking fees for five (5) instances in which Ms. Rose or Mr. Walczak met with Mr. Pushinsky at

his office for work related to the appeal.  The Court of Appeals found that "[u]nder § 1988, such

attorney travel expenses are recoverable as part of reasonable attorneys' fees if 'it is the custom of attorneys in the local community to bill their clients separately for them.' " R&R at 21 (*quoting Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995)).

The Port Authority does not challenge whether reasonable travel expenses are properly recoverable under § 1988, nor does it claim such expenses are not typically charged to clients under billing practices in Pittsburgh, PA.  Accordingly, in line with the ruling by our appellate court, the Court finds that $16 in travel expenses is reasonable and recoverable.  Thus, the objection of the Port Authority will be denied.

The last objection by Port Authority is to the $301.50 incurred by the League and ACLU, a cost charged to the League and ACLU by the Port Authority for copies of its advertisements provided in response to the Right-to-Know Request.  Port Authority argues that "the costs associated with invoking that statutory right to receive information from Port Authority outside of a legal proceeding" cannot be considered to be reasonable litigation costs. This objection will be denied for the same reason that Port Authority's objection to the time counsel spent in making their Right to Know request to Port Authority was denied.  The information obtained through the Right to Know request was an integral part of Plaintiffs' lawsuit and costs incurred by the League and ACLU in obtaining copies of the advertisements should be compensated.

4.        Summary of Counsel Fees and Costs

In accordance with the foregoing analysis, the Petition for Award of Attorney's Fees by Plaintiffs, Pittsburgh League of Young Voters Education Fund and the American Civil Liberties Foundation of Pennsylvania will be **GRANTED IN PART AND DENIED IN PART**.

Defendants, Port Authority of Allegheny County and Anthony J. Hickton, will be required to reimburse Plaintiffs for the counsel fees and costs found to be reasonable by the Court.

To summarize, the League and ACLU are entitled to recover reasonable counsel fees as set forth in the following table, which reflects the adjustments to the hourly rate and hours billed, as discussed above.

| NAME | # HOURS | HOURLY RATE | TOTAL |
|---|---|---|---|
| Jon Pushinsky | 451.30 | $375.00 | $169,237.50 |
| Sara J. Rose | 379.00 | $300.00 | $113,700.00 |
| Witold J. Walczak | 85.45 | $475.00 | $ 40,588.75 |
| Marc Sternberger | 58.45 | $200.00 | $ 11,690.00 |
| Alexandra Morgan-Kurtz | 7.3 | $150.00 | $   1,095.00 |
| **TOTAL** | **981.50** | | **$336,311.25** |

The sum of these figures, $336,311.25, is the lodestar.  In addition to these fees, the total recoverable costs are $7,806.35.  The Court must now consider whether the lodestar should be adjusted, either upward or downward.


5.        Extent of Success for the League and ACLU

Port Authority argues that the lodestar should be reduced because the League and ACLU achieved only limited success in obtaining the relief they sought.   Port Authority claims that the primary argument of the League and ACLU was "that Port Authority created a public forum by accepting nearly all advertisements."  Fee Obj. at 22.

Not surprisingly, the League and ACLU dispute Port Authority's characterization and argue that this lawsuit involved a single claim that was supported by "three alternative legal

theories." Moreover, assuming *arguendo* that the legal theories could be construed as legal claims, "they are so interrelated that it would be impossible to separate the time the League and ACLU attorney's spent on each." Reply at 28. Furthermore, according to the League and ACLU, they "achieved all the relief they sought: a finding that Port Authority's rejection of the ex-offender voting rights advertisement violated their First Amendment rights, a district court order enjoining Port Authority from refusing to accept the advertisement, and an award of all requested money damages." *Id*. at 29.

Port Authority raised this exact argument in its objection to the fee petition filed in the court of appeals. As the Report and Recommendation found, the League and ACLU "attained all the relief they sought in their Amended Complaint following their trial in the District Court, and this Court affirmed that result. Although they did not prevail on each of the alternative legal theories they advanced in support of their claim, they were not required to do so in order to achieve 'complete success'." R&R at 15. As the United States Supreme Court has instructed:

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee . . . . [T]he fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

Report and Recommendation at 25 (*quoting Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983)).

The Court finds that this case involved a substantial commitment of time and labor by the attorneys for the League and ACLU. There were extensive summary judgment briefs filed, a five-day bench trial in which the League and ACLU called twelve (12) witnesses, and extensive post-trial briefing, as well as the factual complexity and difficulty of the legal issues. The Court

finds and rules that no reduction of the lodestar is warranted and that the lodestar amount of

$336,311.25 is reasonable, appropriate, and sufficient to induce a capable attorney to undertake

the representation of this meritorious civil rights case.  The Court also finds that the costs sought,

as adjusted, pursuant to § 1988(b) to be reasonably incurred and typically charged to private

clients.  Thus, the total award in this case is $344,117.60 ($336,311.25 (lodestar) + $7,806.35

(costs)).

### Conclusion

For the hereinabove reasons, a total fee award in the amount of $344,117.60  is

awarded.  An appropriate Order follows.


McVerry, J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

PITTSBURGH LEAGUE OF YOUNG          )
VOTERS EDUCATION FUND and           )
AMERICAN CIVIL LIBERTIES            )
FOUNDATION OF PENNSYLVANIA,         )
                                    )
              Plaintiffs,           )
                                    )
       v.                           )        02: 06-cv-1064
                                    )
PORT AUTHORITY OF ALLEGHENY         )
COUNTY and ANTHONY J. HICKTON,      )
Director of Sales,                  )
                                    )
              Defendants.           )

**ORDER OF COURT**

**AND NOW**, this 24th day of February, 2012,  in accordance with the foregoing

Memorandum Opinion, it is hereby **ORDERED, ADJUDGED AND DECREED** as follows:

1.      The Motion to Strike Exhibits to Reply filed by Defendants Port Authority of

Allegheny County and Anthony J. Hickton, Director of Sales, is **DENIED;**

2.      The Petition for Award of Attorney's Fees by Pittsburgh League of Young

Voters Education Fund and American Civil Liberties Foundation of Pennsylvania  is

**GRANTED IN PART AND DENIED IN PART**.  On or before **March 30, 2012**, or upon such

other terms as the parties may agree, Defendants, Port Authority of Allegheny County and

Anthony J. Hickton, shall reimburse Plaintiffs, Pittsburgh League of Young Voters Education

Fund and American Civil Liberties Foundation of Pennsylvania, the grand total of recoverable

counsel fees and costs in the amount of $344,117.60.

Defendants' failure, neglect, or refusal to timely and fully comply with the terms,

conditions, and requirements of this Order of Court may result in the imposition of additional

sanctions including, but not limited to,  a fine in an amount to be determined per day of non-

compliance.


                                      BY THE COURT:

                                      s/Terrence F. McVerry
                                      United States District Court Judge


cc:        Jon Pushinsky, Esquire
           Email: jonpush@aol.com

           Witold J. Walczak, Esquire
           ACLF of PA
           Email: vwalczak@aclupgh.org

           Sara Rose, Esquire
           ACLU
           Email: srose@aclupa.org

           Gregory J. Krock, Esquire
           Buchanan Ingersoll & Rooney
           Email: gregory.krock@bipc.com

           Corrado Salvatore, Esquire
           Buchanan Ingersoll & Rooney
           Email: corrado.salvatore@bipc.com

           Joseph E. Starkey , Jr., Esquire
           Allegheny Energy, Inc.
           Email: jstark3@alleghenyenergy.com

           Michael J. Cetra, Esquire
           Port Authority of Allegheny County
           Email: mcetra@portauthority.org